**LOCAL NO. 227, AMALGAMATED MEAT CUTTERS AND BUTCHER WORKERS OF NORTH AMERICA, et al. v. F. B. PURNELL SAUSAGE CO.**

Court of Appeals of Kentucky.

Dec. 4, 1953.

Rehearing Denied March 12, 1954.

Herman Cohen, Charles K. Isenberg, Louisville, for appellants.

C. E. Schindler, Louisville, for appellee.

COMBS, Justice.

The sole question on this appeal is whether an injunction restraining a Union from picketing a particular business should be extended to restrain representatives of the Union from attempting to persuade customers of the company to cease doing business with it so long as it remains nonunion. The trial court declined to so extend the injunction.

Both the company and the union were granted appeals from the judgment. The union has not perfected its appeal, and the record was filed here by the company. In the statement of appeal and the briefs, the company is designated as appellee and

cross-appellant. Actually, the company is the appellant. Under Section 755, Civil Code of Practice, applicable to this case, a cross-appeal may be granted only by this Court. The variance is not material, and in the absence of an objection we pass the question.

Representatives of the union, Local No. 227, Amalgamated Meat Cutters and Butcher Workers of North America, called upon the F. B. Purnell Sausage Company in the spring of 1952 and attempted to persuade Mr. Purnell, the owner of the company, to sign an agreement which would constitute the union the local representative of his employees. He refused to enter into the contract and thereafter the union commenced to picket his place of business. One employee, a member of the union, was persuaded to go on strike. The company filed suit charging that the union was attempting to coerce it into signing a union contract, in violation of KRS 336.130(2), which reads:

"Neither employers or their agents nor employes or associations, organizations or groups of employes shall engage or be permitted to engage in unfair or illegal acts or practices or resort to violence, intimidation, threats or coercion."

The company's motion for temporary injunction was refused by the trial court, but the Chief Justice of this Court, on May 12, 1953, directed the issuance of an injunction enjoining the union from "picketing the business premises of the plaintiff." The company thereupon requested the trial court to enjoin the union not only from picketing its premises, but also from attempting to persuade the company's customers not to purchase its products. The judge issued the injunction enjoining the picketing, but declined to extend the injunction as requested by the company.

There is evidence that a number of the company's customers were contacted by representatives of the union, and that several agreed not to buy the company's products.

But the loss occasioned thereby was not established with any degree of certainty.

The company relies solely upon Blue Boar Cafeteria Co., Inc. v. Hotel & Restaurant Employees & Bartenders International Union Local No. 181, Ky., 254 S.W.2d 335. In that case, the union had endeavored to obtain a contract with Blue Boar similar to the one involved here. Blue Boar declined to enter into such a contract and the union placed pickets in front of its cafeterias. Members of the public were requested not to patronize Blue Boar; suppliers were requested not to deliver goods to Blue Boar establishments; customers were requested not to tip the waitresses; one union official drove through the streets of Louisville with a large sign on his car urging the public not to patronize Blue Boar.

The injunction granted in that case enjoined the union from engaging in such practices. But we do not regard the Blue Boar case as authority for the company's position here. Although some language in the order of injunction in that case might be construed as covering a situation of this sort, the opinion and order were, of course, based on the facts shown by the record. There the solicitation of the public not to patronize Blue Boar cafeterias was by the pickets themselves; and the display of the sign urging a boycott of Blue Boar cafeterias was so closely connected with the picketing as to constitute merely an extension of the picket line. Since we held the picketing to be illegal, we enjoined other activities incidental to the picketing.

We know of no authority by which we could enjoin the representatives of the union under the circumstances here shown from merely requesting retail merchants not to do business with this particular company. The statute, KRS 336.130(2), prohibits violence, intimidation, threats or coercion. None of those elements is present here.

The judgment is affirmed.